# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

ENTROPIC COMMUNICATIONS, LLC.,

      Plaintiff,

    v.

VANTIVA SA,

      Defendant.

Civil Action No. 2:24-cv-00912-RWS-RSP

JURY TRIAL DEMANDED

## DEFENDANT'S MOTION TO TRANSFER VENUE OR IN THE ALTERNATIVE STAY PROCEEDINGS PENDING *INTER PARTES* REVIEW

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND .............................................................................. 2

A.  The Relevant Witnesses are Located in California, Not Texas ............................. 2

B.  Entropic Is Already Asserting the Asserted Patents Against the Same Vantiva SA Products in the Central District of California ...................................................... 5

III.  ARGUMENT ....................................................................................................... 5

A.  This Case Should Be Transferred to the Central District of California ................. 5

1.  Legal Standard ...................................................................................... 5

2.  This Action Could Have Been Brought in the Central District of California ............................................................................................... 6

3.  The Private Factors Strongly Favor Transfer ....................................... 7

a.  Compulsory Process Over Key Witnesses in the Central District of California Strongly Favors Transfer ............................ 7

b.  The Relative Ease of Access to Sources of Proof Favors Transfer ..................................................................................... 8

c.  The Practical Problems Factor Strongly Favors Transfer ............... 9

d.  The Convenience of Willing Parties Slightly Favors Transfer ......11

4.  The Public Factors Strongly Favor Transfer ...................................... 12

a.  The Central District Has a Strong Interest in Deciding This Case ......................................................................................... 12

b.  The Other Public Factors Favor Transfer or Are Neutral ............ 12

B.  In the Alternative, This Case Should Be Stayed Pending Imminent IPR Results ...................................................................................................................... 13

1.  Legal Standard .................................................................................... 13

2.  The Court Should Stay the Case Pending the Upcoming FWDs ............. 13

a.  A Stay Is Likely to Eliminate, or at Least Simplify, the Issues .... 13

b.  There Will Be No Undue Prejudice from a Stay ........................... 14

c.  A Stay Will Streamline, and Potentially Eliminate, the Case ....... 15

IV.  CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)............................................................................14

*Bering Sea Env't, LLC v. Peterson*,
    2019 WL 13150079 (E.D. Tex. Aug. 15, 2019) ......................................................5

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
    25 F.4th 976 (Fed. Cir. 2022) ............................................................................10

*Cellspin Soft, Inc. v. Nike, Inc.*,
    2023 WL 6280260 (E.D. Tex. Sept. 26, 2023)......................................................7, 8

*Cypress Lake Software v. Samsung Elecs. Am., Inc.*,
    2019 WL 13335932 (E.D. Tex. Aug. 28, 2019) ................................................13, 14

*CyWee Grp. Ltd. v. Samsung Elecs. Am., Inc.*,
    2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) ................................................13, 14

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
    2017 WL 1322555 (E.D. Tex. Apr. 6, 2017) ...........................................................8

*Entropic Commc'ns LLC v. DirecTV, LLC*,
    No. 22-cv-00075, Dkt. 77 (E.D. Tex. Aug. 4, 2022) ................................................1

*Entropic Commc'ns, LLC v. Comcast Corp.*,
    No. 23-cv-01050 (C.D. Cal. Feb. 10, 2023) ..................................................*passim*

*Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*,
    No. 23-cv-01049 (C.D. Cal. Feb. 10, 2023) ..................................................*passim*

*Entropic Commc'ns, LLC v. DirecTV, LLC et al.*,
    2022 WL 19076758 (E.D. Tex. Oct. 24, 2022) (J. Gilstrap) ..........................*passim*

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
    2016 WL 1162162 (E.D. Tex. Mar. 23, 2016) ......................................................13

*Farmobile LLC v. Farmers Edge Inc.*,
    2022 WL 2653893 (E.D. Tex. July 7, 2022) ..........................................................9

*Honeywell Int'l, Inc. v. United States*,
    107 Fed. Cl. 659 (2012) ....................................................................................10

*ICharts LLC v. Tableau Software, LLC*,
    2024 WL 2305214 (W.D. Tex. May 21, 2024) .......................................................8

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
  2017 WL 7051628 (E.D. Tex. Oct. 25, 2017) .......................................................................12

*In re Google LLC*,
  2021 WL 4592280 (Fed. Cir. Oct. 6, 2021)............................................................................11

*In re TS Tech*,
  551 F.3d 1315 (Fed. Cir. 2008)................................................................................................6

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ........................................................................................ *passim*

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ....................................................................................................9

*MacroPoint, LLC v. Ruiz Food Prods., Inc.*,
  2018 WL 11351979 (E.D. Tex. April 17, 2018)......................................................................13

*Microlinc, LLC v. Intel Corp.*,
  2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ........................................................................14

*NFC Tech. LLC v. HTC Am., Inc.*,
  2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ..................................................................13, 14

*Norman IP Holdings v. TP-Link Techs.*,
  2014 WL 5035718 (E.D. Tex. Oct. 8, 2014) ...........................................................................15

*NovelPoint Tracking LLC v. Hemisphere GNSS (USA) Inc.*,
  2015 WL 4193727 (E.D. Tex. Mar. 30, 2015) ..........................................................................6

*Princeton Digital Image Corp. v. Facebook, Inc.*,
  2012 WL 3647182 (E.D. Tex. Aug. 23, 2012) .........................................................................10

*SQIP, LLC v. Cambria Co., LLC*,
  728 F. Supp. 3d 447 (E.D. Tex. 2024)........................................................................................6

*SynQor, Inc. v. Vicor Corp.*,
  2015 WL 12916396 (E.D. Tex. Nov. 24, 2015) .......................................................................15

*Viking Techs., LLC v. Assurant, Inc.*,
  2021 WL 3520756 (June 21, 2021) ..........................................................................................12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014)..........................................................................................14, 15

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................................5, 9

35 U.S.C. § 326(a)(11)......................................................................................................................13

iii

## I.    __INTRODUCTION__

This case is nothing but a mirror of pending litigation filed by Plaintiff Entropic Communications, LLC ("Plaintiff" or "Entropic") over two years ago against cable companies Comcast Corporation ("Comcast") and Cox Communications Inc. ("Cox").    *See Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, No. 23-cv-01049 (C.D. Cal. Feb. 10, 2023) ("*Cox*"); *Entropic Commc'ns, LLC v. Comcast Corp.*, No. 23-cv-01050 (C.D. Cal. Feb. 10, 2023) ("*Comcast*") (together, "Cable Cases").   The Asserted Patents[1] and accused products in this case wholly overlap with those already at issue in the Cable Cases.   Plaintiff filed the present litigation against Vantiva SA ("Defendant" or "Vantiva SA")—a wrongly named foreign corporation with no ties to Texas—in an apparent attempt to hedge its bets across two districts.   But Entropic itself has argued under similar circumstances that a case ***must be transferred to California*** because that is where nearly all relevant witnesses (including third-party suppliers and inventors), documentary evidence, and other sources of proof are found.   *See Entropic Commc'ns, LLC v. DirecTV, LLC et al.*, 2022 WL 19076758, at *8 (E.D. Tex. Oct. 24, 2022) (Gilstrap, J.) ("*DirecTV* Order"); *Entropic Commc'ns LLC v. DirecTV, LLC*, No. 22-cv-00075, Dkt. 77 (E.D. Tex. Aug. 4, 2022) ("*DirecTV*, Dkt. 77").   Entropic's own logic applies with even greater force here.   Not only are the evidence and witnesses tied to Central California, but transfer would also promote judicial economy by allowing consolidation with the Cable Cases.

If this Court nonetheless decides to keep this case, it should be stayed.   All six of the Asserted Patents are subject to instituted *inter partes* review ("IPR"), and a final written decision ("FWD") on five of those patents will be returned by October 6, 2025.   A short stay will not

---

[1] "Asserted Patents" refers to U.S. Patent Nos. 8,223,775 (the "'775 patent"); 8,792,008 (the "'008 Patent"); 9,825,826 (the "'826 Patent"); 11,318,866 (the "'866 Patent"); 11,399,206 (the "'206 Patent"); and 11,785,275 (the "'275 Patent").

prejudice Entropic—and given that this case just started, a stay greatly favors judicial economy by allowing the parties and the Court to focus only on those claims that survive IPR.

## II.    FACTUAL BACKGROUND

### A.    The Relevant Witnesses are Located in California, Not Texas

In a prior case in which Entropic asserted MaxLinear Inc. ("MaxLinear") patents against functionality in Broadcom Inc. ("Broadcom") chips, as it does here, Entropic admitted that "California is the location where most of the relevant witnesses and sources of proof are located." *DirecTV*, Dkt. 77 at 1. This case is no different. The accused functionality was designed and developed in California, and none of the witnesses able to speak to that functionality are in Texas.

*First*, the entities with the most information on the accused technology and Asserted Patents are California-based Broadcom and MaxLinear. *See* Ex.[2] 1 at 1; Ex. 2 at 2; Holohan Decl. (counsel for Broadcom) ¶ 3. As direct competitors in the development of DOCSIS silicon, the two entities (particularly the engineers and executives they employ) possess unique knowledge of the standards, design choices, and performance of the technology central to infringement and damages issues here. *See*, *e.g.*, *id.*, Ex. 3 at 3; Dkt. 1 ¶¶ 84, 86 (alleging DOCSIS is foundational to Accused Products).

Entropic's infringement allegations point to the use of Broadcom systems-on-a-chip ("SoCs") in the accused set-top boxes and cable modems (the "Accused Products"[3]). Dkt. 1 ¶¶ 38–40; Ex. 4. A more accurate description, however, is that the alleged infringement is *entirely dependent* on the operation of these SoCs. *See* Ex. 4 (Entropic's infringement contentions, served

---

[2] Unless stated otherwise, all exhibits cited herein are attached to the Declaration of Krishnan Padmanabhan ("Padmanabhan Decl.") submitted along with, and in support of, this motion.

[3] Entropic defines "Accused Products" as cable modems and set-top boxes that include various Broadcom chips. Dkt. 1 ¶¶ 39–40 (cable modems and set-top boxes "that include or are based on the BCM3390, BCM33843, or BCM3384 SoCs").

May 30, 2025, extensively relying on Broadcom SOCs for almost every limitation). Proximity to Broadcom, its evidence, and its witnesses will therefore be crucial to infringement and validity. Entropic admits that Broadcom's "engineers [are] located in or around the Central District of California." *DirecTV*, Dkt. 77 at 8; *see also* Exs. 6-7. And the exhibits to Entropic's Complaint demonstrate that Broadcom developed the accused technology for five of the six Asserted Patents—Full-Band Capture—in Irvine, CA, which is within the Central District. Dkt. 1-12 (Broadcom white paper cited in Dkt. 1-16 to 1-18 (infringement charts for '866, '206, and '275 Patents)); Dkt. 1-14 at 2 (accusing Broadcom's "Full-band Capture"); Dkt. 1-15 at 3 (same); *see also* Holohan Decl. ¶ 3. Given Broadcom's long-running competition with MaxLinear, it is also unsurprising that Broadcom is a source of critical prior art to the Asserted Patents. For example, the Broadcom BCM3380 SoC, which is a key prior art product, was developed at Broadcom's Irvine facilities. Ex. 5 at 2. Key Broadcom prior artists involved in developing Broadcom's relevant technology—including Francesco Gatta, Ray Gomez, and Leonard Dauphinee—also reside within the Central District of California, in Laguna Niguel, San Juan Capistrano, and Costa Mesa respectively. *Id.*, Exs. 6–11.

**Second**, Entropic's predecessor for the Asserted Patents, MaxLinear,[4] is based in Carlsbad, CA, just "55 miles from the Central District of California," as Entropic has told this Court. *DirecTV*, Dkt. 77 at 6; *see also* Ex. 12. MaxLinear has developed and sold chips that have competed with the Broadcom chips in the set-top box and cable modem marketplace. For example, MaxLinear introduced chips monikered "Full-Spectrum Capture" to compete with Broadcom's

---

[4] In 2015, MaxLinear acquired Entropic Incorporated ("Legacy Entropic"), and Plaintiff Entropic succeeded to ownership interests in the Asserted Patents in 2021. Dkt. 1 ¶¶ 9, 15, 18. As Plaintiff Entropic has admitted, Legacy Entropic is one of the companies "that originally developed the patented technology," and it is "located less than 100 miles from the Central District of California." *DirecTV*, Dkt. 77 at 1.

Full-Band Capture chips. Ex. 13. MaxLinear, a financially interested party, and its employees likely have knowledge key to this dispute. *See, e.g.*, Ex. 14; *Cox*, Dkt. 46 (confirming MaxLinear has a financial interest in the outcome of Entropic's litigations).

**Third**, all but one of the inventors of the Asserted Patents live within or near the Central District. Two inventors of the '866, '206, and '275 Patents—Madhukar Reddy and Dr. Curtis Ling—live in Carlsbad, CA, while the third, Timothy Gallagher, lives in Kirkland, WA. Dkt. 1-4 at 2; Dkt. 1-5 at 2; Dkt 1-6 at 2; Exs. 15–17. Mr. Reddy and Dr. Ling are still employed by MaxLinear. Ex. 18. The inventors of the '008 and '826 Patents are Patrick Tierney, of Encinitas, CA; Jun Huang, of Irvine, CA; and Mr. Gallagher. Dkt. 1-2 at 2; Dkt. 1-3 at 2; Exs. 17, 19–20. The inventors of the '775 Patent—Gordon Y. Li and Yoav Hebron—reside within 100 miles of the Central District of California courthouse, in San Diego, CA. Dkt. 1-1 at 2; Exs. 21-22.

**Fourth**, Entropic's witnesses are in California. Entropic is a non-practicing patent monetization entity that acquired MaxLinear's ownership interests in the Asserted Patents in 2021.[5] Dkt. 1 ¶¶ 9, 15, 18. According to both the Complaint and Entropic's website, Entropic's address is 7150 Preston Road, Suite 300, Plano, Texas 75024. Dkt. 1 ¶ 8; Ex. 23. However, a completely different business—Bentley Legacy, a hospitality company—is at Entropic's stated address; Entropic's address is nothing more than a drop box. Exs. 24–25. Further, Entropic's principals—Mr. Teksler and Ms. Gothing—are located in California. *Id*., Exs. 26–27.

Like Entropic, Defendant Vantiva SA has no operations, personnel, offices, or ownership interest in any property in Texas. Damiron Decl. (officer of Vantiva SA) ¶ 7. Defendant Vantiva SA is headquartered in Paris, France. *Id*. ¶ 4. Vantiva SA is not responsible for sales of the Accused

---

[5] While Plaintiff Entropic has renewed the name "Entropic," it has no corporate relationship with Legacy Entropic, which was acquired by MaxLinear in 2015. MaxLinear subsequently sold its patents to a patent monetization entity which chose the name Entropic.

Products in the United States. *Id*. ¶ 5. And the party that is responsible, Vantiva USA, LLC ("Vantiva USA"), is not a party to this suit.[6] *Id*. Regardless, Vantiva USA has no operations, offices, or ownership interest in any property in Texas either. *Id.* ¶7.

> **B.    Entropic Is Already Asserting the Asserted Patents Against the Same Vantiva SA Products in the Central District of California**

Since 2023, Entropic has been litigating the *same Asserted Patents, against the same accused products*, in the Central District of California. *See generally Cox*; *Comcast*. The court overseeing the consolidated Cable Cases has expended significant judicial resources on the claims at issue here, most recently hearing argument on claim construction. *Cox*, Dkts. 325, 332–33, 337. In parallel circumstances, Entropic has argued for "[t]ransfer to the Central District of California" to "allow[] the case to remain consolidated with the lead case[.]" *DirecTV*, Dkt. 77 at 1.

## III.    **ARGUMENT**

As discussed below, the Court should transfer this case to the Central District of California, because it is clearly the more convenient venue. Alternatively, it should stay proceedings until October 6, 2025, at which point the case should be simplified by FWDs on five of the six IPRs. The sixth and final instituted IPR challenges a continuation patent, the '275, and thus will also be informed by the FWDs issued by October 6, 2025.

> **A.    This Case Should Be Transferred to the Central District of California**

> **1.    Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The threshold inquiry is "whether the judicial district to which transfer is

---

[6] In an apparent attempt to circumnavigate the venue statute, Entropic declined to name Georgia- and Indiana-based Vantiva USA as a defendant in this suit. *See* Damiron Decl. ¶ 6.

sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").   Once this threshold is met, courts "balance a series of public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case." *Bering Sea Env't, LLC v. Peterson*, 2019 WL 13150079, at *2 (E.D. Tex. Aug. 15, 2019) (Schroeder, J.).

The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319.   "The plaintiff's choice of venue is not a factor in this analysis." *NovelPoint Tracking LLC v. Hemisphere GNSS (USA) Inc.*, 2015 WL 4193727, at *1 (E.D. Tex. Mar. 30, 2015) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*")). Adjudication of these factors is a very fact-intensive inquiry, decided on an "individualized, case-by-case consideration of convenience and fairness." *SQIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 452 (E.D. Tex. 2024).[7]

## 2.   This Action Could Have Been Brought in the Central District of California

It is "undisputed that this action could have been brought in the Central District of

---

[7] All internal citations have been omitted unless otherwise noted.

California" where, as here, Vantiva SA is a non-resident corporation. *See DirecTV*, Dkt. 77 at 3; Dkt. 1 ¶¶ 31–32. Per Entropic's own allegations, Vantiva SA "markets," "offer[s] for sale," "provides service [for]," and "[puts] into the stream of commerce" the Accused Products in the Central District of California. Dkt. 1 at ¶¶ 24–30, 55; *Comcast*, Dkt. 1 ¶ 6; *Cox*, Dkt. 1 ¶ 17. Under the Patent Laws, subject matter jurisdiction is also appropriate in that district. Dkt. 1 ¶ 22.

### 3.    The Private Factors Strongly Favor Transfer

#### a.    Compulsory Process Over Key Witnesses in the Central District of California Strongly Favors Transfer

As Entropic has previously asserted, because "third-party suppliers are located and relevant design and development activity occurred [in or around the Central District of California,] this case should be transferred [there]." *Id.* at 11–12. This Court found these facts to weigh in favor of transfer in *DirecTV* (s*ee DirecTV* Order, at *7) and should do so here, too. Further, as Entropic has correctly explained, "the relative availability of compulsory process is particularly important in evaluating venue convenience." *DirecTV*, Dkt. 77 at 8. Here, too, Vantiva SA will need compulsory process to ensure the attendance of third-party Broadcom and MaxLinear witnesses.

Broadcom witnesses are needed to discuss the operation of the accused Broadcom chips, which is relevant to the issue of noninfringement. But Broadcom has made clear that it plans not to make its employees available to testify at trial in this matter. Holohan Decl. ¶¶ 5-6. Compulsory process will thus be necessary to compel their attendance. California-based former Broadcom prior artists, including Messrs. Gatta, Gomez, and Dauphinee, are also needed to testify to critical facts on validity, and they are presumed to be unwilling. Exs. 9–11; *Cellspin Soft, Inc. v. Nike, Inc.*, 2023 WL 6280260, at *3 (E.D. Tex. Sept. 26, 2023) ("When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling.") (quoting *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). None of these witnesses are subject to

compulsory process in this District.

Similarly, MaxLinear witnesses are necessary on a variety of issues, including the conception and reduction to practice of the inventions and the value of the invention in MaxLinear's patent-practicing products. MaxLinear is also the appropriate party to speak to the patent holder's perspective during the hypothetical negotiation, since the Accused Products were offered for sale well before the transfer of the patents from MaxLinear to Plaintiff Entropic in 2021. *See* Dkt. 1 ¶ 18; Dkt. 1-7 (CGM4331 existed in 2019); *see also Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL 1322555, at *6 (E.D. Tex. Apr. 6, 2017) ("[T]he date of the hypothetical negotiation is the date that the infringement began."). These witnesses work and reside in California and are subject to compulsory process there, but not here. *See* Exs. 15–16, 18; *see also Cellspin*, 2023 WL 6280260, at *3.

> **b.      The Relative Ease of Access to Sources of Proof Favors Transfer**

Where, as here, "[t]here is no dispute" that relevant documents are located in California, and not Texas, this factor also favors transfer. *See DirecTV*, Dkt. 77 at 6. A court will "look to the location where the allegedly infringing products were researched, designed, developed, and tested." *ICharts LLC v. Tableau Software, LLC*, 2024 WL 2305214, at *7 (W.D. Tex. May 21, 2024) (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

As discussed above, the allegedly infringing functionality is found in Broadcom chips used in the accused set-top boxes and cable modems. Entropic has previously sought to transfer to the Central District of California when a case in that district and a case in this District alleged infringement by "identical Broadcom chipsets." *See DirecTV*, Dkt. 77 at 1, 6, 12–13. The same is true here. The infringement allegations against Vantiva SA are identical to those against Comcast and Cox because they are based on the alleged infringement of *identical* set-top boxes and cable modems using *identical* Broadcom chipsets. *Compare* Ex. 4 (infringement contentions

against Vantiva SA accusing Cox and Comcast cable modems and set-top boxes, based on the operation of Broadcom SoCs) *with, e.g., Cox*, Dkt. 1-2 (allegations against Cox for the '775 patent, accusing the same Cox cable modems and set-top boxes, based on the operation of Broadcom SoCs) *and Cox*[8], Dkt 128-2 (allegations against Comcast for the '775 patent, accusing the same Comcast cable modems and set-top boxes, based on the operation of Broadcom SoCs).[9]

Those Broadcom chips were developed at Broadcom's offices in Irvine, CA, a 30-minute drive from the Ronald Reagan Courthouse in Santa Ana where the Cable Cases are pending. *See* Holohan Decl. ¶ 3; Dkt. 1-12 at 7 (Broadcom "Full-Band Capture Cable Tuning" white paper bearing "Irvine, California"); *see also* Exs. 6–7 (bearing "Irvine, California"); *see also, e.g.*, Ex. 28 at 6. Similarly, documents regarding conception and reduction to practice of the Asserted Patents, and MaxLinear's use of the Asserted Patents, are in MaxLinear's possession in and around the Central District of California. *DirecTV*, Dkt. 77 at 6, 11. Thus, discovery will be substantially more accessible in the Central District of California. This factor strongly favors transfer.

### c.    The Practical Problems Factor Strongly Favors Transfer

Judicial economy favors transfer where "other practical problems [] make trial of a case easy, expeditious and inexpensive." *Farmobile LLC v. Farmers Edge Inc.*, 2022 WL 2653893, at *2, *4–5 (E.D. Tex. July 7, 2022). "[T]he existence of multiple lawsuits involving the same or similar issues" also favors transfer to avoid practical difficulties. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").

---

[8] The case against Comcast has been consolidated with the case against Cox (No. 2:23-cv-1049).

[9] In the Cox and Comcast cases, Entropic accuses the same cable modems and set-top boxes, based on the operation of Broadcom SoCs for the other Asserted Patents. *See also Cox*, Dkts. 1-6 (Cox, '008 chart); 128-6 (Comcast, '008 chart); 1-10 (Cox, '826 chart); 128-10 (Comcast, '826 chart); 1-14 (Cox, '866 chart), 128-14 (Comcast, '866 chart); 1-16 (Cox, '206 chart); 128-16 (Comcast, '206 chart); 128-20 (Comcast, '275 chart). The charts against Cox and Comcast are attached as Exhibits 43 and 44 respectively.

Here, Entropic's earlier-filed cases against Comcast and Cox involve the same Asserted Patents and accused products. *See supra* III.A.3.b. This direct overlap means substantial judicial economy will arise from consolidated depositions on infringement, validity, and damages issues, including of third parties MaxLinear and Broadcom. As Entropic admits, courts weighing the merits of a transfer motion consider the "co-pendency of cases involving the same patent[s]" and find that "'[p]ermitting a situation in which two cases involving the same issues are simultaneously pending in different District Courts [would] lead[] to the very wastefulness of time, energy, and money that 28 U.S.C. § 1404(a) was designed to prevent.'" *DirecTV*, Dkt. 77 at 2, 12. This is particularly true when, as here, "there will likely be common defenses" asserted by the parties. *See id.* at 12. Transfer will also prevent inconsistent discovery and summary judgment rulings.

There is little question that there are "numerous overlapping factual and legal issues between [this case and the Cable Cases]" and that there will be "material benefits to the parties and the Courts" from transfer. *DirecTV* Order, at *8. Entropic has previously moved to transfer to the Central District of California for exactly these reasons, and this Court agreed that transfer was appropriate. *See id.*; *DirecTV*, Dkt. 77 at 12–13. The Cable Cases will also rely on witnesses from MaxLinear for background on the same technology at issue here. And the hypothetical negotiation between MaxLinear—which makes chips for set-top boxes and cable modems—and Vantiva SA—which allegedly builds (albeit through an indirect subsidiary) those set-top boxes and cable modems—will be highly relevant to, if not supersede, any negotiation with Comcast and Cox. *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993–94 (Fed. Cir. 2022) (holding a two-tiered approach to damages based on the "device" and "chip" levels was inappropriate because "the mere fact that Broadcom and Apple are separate infringers alone does not support treating the same chips differently at different stages in the supply chain"); *see also Honeywell Int'l, Inc. v.*

*United States*, 107 Fed. Cl. 659, 689 (2012).

The stage of the Cable Cases also poses no practical issues for transfer.  No witnesses have been deposed, and the court has yet to set a date for the close of discovery or trial.  *See* Padmanabhan Decl. ¶ 2.  Given that Vantiva SA could seamlessly join the Cable Cases without requiring the extension of any deadlines, "it simply does not make any sense for two courts to plow the same ground." *Princeton Digit. Image Corp. v. Facebook, Inc.*, 2012 WL 3647182, at *5 (E.D. Tex. Aug. 23, 2012).  Transfer provides substantial efficiency by allowing discovery and motion practice to occur once, instead of across multiple districts, and avoids inconsistent outcomes.  *See id.* (finding that transfer to SDNY, where related cases were pending, led to judicial economy).

### d.    The Convenience of Willing Parties Slightly Favors Transfer

No party or willing witness resides in this District.  While Defendant expects that Vantiva SA personnel will have limited relevant knowledge (because it does not deal with the Accused Products), it would be more convenient for Vantiva SA witnesses to appear in the Central District of California.  Plane tickets from Paris (Vantiva SA's headquarters) to Los Angeles are frequently cheaper than to Dallas; and from Dallas, Vantiva SA witnesses would need to drive three hours to this Court, while a trip from Los Angeles to Santa Ana would take one-third of the time.   Exs. 29; Ex. 30.  To the extent the Court considers the convenience of Vantiva USA witnesses, this factor would be neutral, as they reside in Georgia and Indiana.  *Id.*, Ex. 31; Damiron Decl. ¶ 6.

While Entropic invoked this Court's jurisdiction, Entropic's witnesses would also be served by the Court granting this motion.  Entropic's Plano "office" is, at best, a drop box.  *See* Exs. 23–25.  Entropic's principals, Mr. Teksler and Ms. Gothing, are located in Northern California, only a short flight from the Central District of California, and far from this District.  *Id.*, Exs. 26–27, 32.

### 4.    The Public Factors Strongly Favor Transfer

#### a.    The Central District Has a Strong Interest in Deciding This Case

Cases should be decided wherever there are "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Google LLC*, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021) (emphasis in original). Local interests are a key consideration in the transfer analysis because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.

Here, the Central District of California's interest cannot be questioned. This is a case regarding two competitors in the cable semiconductor market—MaxLinear and Broadcom—based just miles apart from each other in Central California. *See* Exs. 1–2, 12; *see also DirecTV*, Dkt. 77 at 6. As Entropic has explained, "[t]he inventors of the patents-in-suit designed and developed the patented technology in and around the Central District of California while working at [Legacy Entropic] and MaxLinear." *DirecTV*, Dkt. 77 at 11. Key prior art was also developed in that District. *See supra* § III.A.3.a. And the allegedly infringing acts of both Cox and Comcast occurred in that District. *Id.* The same cannot be said for the Eastern District of Texas, as neither MaxLinear nor Broadcom developed the disputed technology or prior art here. Cox does not even offer services here. Accordingly, this factor, too, heavily favors transfer. *DirecTV* Order, at *8; *see also Viking Techs., LLC v. Assurant, Inc.*, 2021 WL 3520756, at *5–6 (E.D. Tex. June 21, 2021).

#### b.    The Other Public Factors Favor Transfer or Are Neutral

The Central District of California enjoys a less congested docket than this District. *See* Ex. 33 at 35, 68 (at the end of 2024, 826 cases were pending per judge in E.D. Tex., and 498 cases were pending per judge in C.D. Cal.). So, if this case is consolidated with the Cable Cases, the parties' actual time to trial will be substantially reduced. Importantly, in similar circumstances, Entropic has agreed that transfer is warranted. *See DirecTV*, Dkt. 77 at 13–14. The remaining

factors are neutral: (i) both districts are well acquainted with the relevant law; and (ii) conflict of law and foreign law do not favor one district over the other.  *See* Ex. 34.

### B.    In the Alternative, This Case Should Be Stayed Pending Imminent IPR Results

To the extent that this Court is not inclined to transfer this case, this case should be stayed pending imminent FWDs that will issue on five of the six Asserted Patents by October 6, 2025.

### 1.    Legal Standard

The Court has "inherent power to control its own docket, including the power to stay proceedings" pending IPR.  *Image Processing Techs., LLC v. Samsung Elecs. Co.*, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017).  This District considers three factors when evaluating a motion to stay: (1) "whether the stay will likely result in simplifying the case before the court"; (2) "whether the stay will unduly prejudice the nonmoving party"; and (3) "whether the proceedings before the court have reached an advanced stage."  *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015).  It also considers if the stay "will reduce the burden of litigation on the parties and the court."  *Id.* at *5.  "A stay is particularly justified when the outcome of a [PTAB] proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues."  *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2016 WL 1162162, at *1 (E.D. Tex. Mar. 23, 2016).

### 2.    The Court Should Stay the Case Pending the Upcoming FWDs

Comcast filed IPRs on all Asserted Patents, and the PTAB instituted as to all challenged claims. Exs. 35–40.  The FWDs for five of the six IPRs are statutorily required by October under 35 U.S.C. § 326(a)(11).  Given the high probability these IPRs will slim the case or at least inform the parties' positions, the totality of the circumstances favors a stay pending the five FWDs.

#### a.    A Stay Is Likely to Eliminate, or at Least Simplify, the Issues

"The most important factor bearing on whether to grant a stay is whether the stay is likely

to simplify the issues at trial." *CyWee Grp. Ltd. v. Samsung Elecs. Co. Ltd.*, 2019 WL 11023976, at *7 (E.D. Tex. Feb. 14, 2019). "[T]he focus of this factor is on streamlining or obviating the trial" through the PTAB's guidance. *MacroPoint, LLC v. Ruiz Food Prods., Inc.*, 2018 WL 11351979, at *3 (E.D. Tex. April 17, 2018). Here, the PTAB has determined that Comcast is reasonably likely to succeed on its petitions on all Asserted Patents, for all challenged claims. Exs. 35–40. So, all claims here could be eliminated; or at the very least, some material simplification is bound to result. *Cypress Lake Software v. Samsung Elecs. Am., Inc.*, 2019 WL 13335932, at *5 (E.D. Tex. Aug. 28, 2019) ("[I]f the proceedings result in cancelation of some or all of the asserted claims, either some portion of the litigation will fall away, or the litigation will come to an end altogether."); *see* Ex. 41, at 13 (nearly 80% of claims that reach FWD were held unpatentable in fiscal year 2025 to date). Vantiva SA has also committed to estoppel on the instituted IPR grounds to further simplify the issues in the case. *See* Ex. 42; *NFC*, 2015 WL 1069111, at *4.

"[E]ven if the PTAB does not invalidate any of the claims in the pending IPR proceedings, the expertise of the PTAB judges in this field of art is likely to be of considerable assistance to the Court in this complex case." *CyWee*, 2019 WL 11023976, at *10. The Asserted Patents here are from three different families (the '866, '206, '275 Patents are related, and the '826 Patent is child of '008 Patent), and they relate to digital signal processing and chip architecture. The PTAB's guidance on the cited prior art, and any distinction from the claims, will undoubtedly focus this complex dispute. *See CyWee*, 2019 WL 11023976, at *9 (in complex cases, "there is a particularly high premium on simplification"). And any attempts by Entropic to distinguish the prior art from the claims may impact claim scope. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359–62 (Fed. Cir. 2017) (prosecution estoppel extends to IPRs).

> **b.    There Will Be No Undue Prejudice from a Stay**

When a plaintiff "seeks exclusively monetary damages," as Entropic does here, "mere

delay in collecting those damages does not constitute undue prejudice." *Cypress Lake*, 2019 WL 13335932, at *2; *see also VirtualAgility Inc. v. Salesforce.com, Inc*., 759 F.3d 1307, 1318 (Fed. Cir. 2014).  Entropic does not practice the Asserted Patents or sell any products.  *See Microlinc, LLC v. Intel Corp*., 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010).  To minimize any possible prejudice to Entropic, Vantiva SA only requests in good faith a modest stay of less than five months, *until the second-to-last FWD*.  That delay is inconsequential, especially given the age of the patents and the fact that Entropic began asserting them against Comcast and Cox in 2023. Entropic waited nearly four years after acquiring the Asserted Patents to sue Vantiva SA, and it will suffer no harm by waiting five more months to see if any survive IPR.  Dkt. 1 ¶ 18; *VirtualAgility*, 759 F.3d at 1319 (patentee's delay of "nearly a year" weighed against prejudice).

### c.      A Stay Will Streamline, and Potentially Eliminate, the Case

This case is at its earliest stages.  Vantiva SA answered on May 12, 2025.  There is no case schedule, and no discovery has been conducted.  A stay of five months pending the second-to-last FWD will save the parties and this Court substantial time and resources.  For instance, Markman will be greatly streamlined once the PTAB clarifies which, if any, of the Asserted Patents survives IPR.  A "significant amount of work [lies] ahead for the parties and the court," and because that work will be informed and cabined by the PTAB's decisions, Vantiva SA's motion to stay must be granted.  *Norman IP Holdings v. TP-Link Techs.*, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014); *see also SynQor, Inc. v. Vicor Corp.*, 2015 WL 12916396, at *4 (E.D. Tex. Nov. 24, 2015).

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Vantiva SA requests that this case be transferred to the Central District of California for consolidation with the Cable Cases.  In the alternative, Vantiva SA requests a stay until October 6, 2025, by which time the first five IPR FWDs will have issued.

Respectfully submitted,

Dated: <u>June 2, 2025</u>

<u>/s/ K. Padmanabhan</u>
Krishnan Padmanabhan (*pro hac vice*)
kpadmanabhan@winston.com
**WINSTON & STRAWN LLP**
200 Park Ave.
New York City, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Saranya Raghavan (*pro hac vice*)
sraghavan@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Deron R. Dacus
Texas Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117
E-mail: ddacus@dacusfirm.com

*Attorneys for Defendant Vantiva SA*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on June 2, 2025.

By: */s/ Saranya Raghavan*
Saranya Raghavan

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned certifies that Saranya Raghavan, counsel for Defendant, met and conferred with Meredith McBride, counsel for Plaintiff, on April 23, 2025, and again on June 2, 2025.  Plaintiff's counsel stated Plaintiff is opposed to the relief Defendant requests herein, leaving an open issue for the court to resolve.

By:*/s/ Saranya Raghavan*

Saranya Raghavan